Cap Export v. Zinus. Mr. Wallace, please proceed. Thank you, Judge Moore. Good afternoon, Your Honors. $87 million. That is the amount of commercial success that Zinus has achieved selling its patented bed this year. And Zinus sold $20 million of the patented bed last year. Moreover, the cap parties admitted in their pleadings that their copied bed... You would have liked to have introduced if you had had the opportunity to take discovery and put in evidence, correct? Correct, Your Honor. If we hadn't been surprised by a sua sponte summary judgment of invalidity when there was only a motion for validity, we would have introduced... And so you would have liked to have been able to introduce evidence of commercial success among others, like copying possibly or something along those lines. But you didn't have a chance to develop that discovery, is that right? We had no opportunity whatsoever for discovery. Discovery was always closed to us. As to everything except for the standing question, right? Correct. But for us, we didn't need the standing issue. That was just a question of whether there was a typo on an assignment. And they tried to use that as a way to get out of the case. But that was found that it was a typo. Well, it wasn't a typo. There was the wrong name. A typo would suggest an individual letter or something, right? Well, it was a secretary who forgot to correct that paragraph and just corrected the signature. It was a secretary in China who probably just didn't read the whole document. But in terms of your commercial success, if it's your product and it falls within the claims, you wouldn't even have to establish nexus because you get a presumption of it, right? Correct. Okay. And so the lack of discovery is one of your main arguments. One of the others I understand is the due process really a violation of the sua sponte summary judgment that was levied against you. Correct. Those RFACs fall very similar to the Massey v. Dell case. And there's progeny and then there's also Rule 56, which I believe codifies the whole thing there that you have to be given notice. And it's not notice of the issue, but notice that you could lose in this case because there was a motion for validity. Without even infringement, without even invalidity contentions on the books yet, correct? In the Central District of California, there are no patent local rules like in the Northern District. So there are no invalidity contentions. And in jurisdictions where there are no patent local rules, which is usually— How did you know what prior art to even argue against on validity? We didn't. You chose what they gave you in that letter, I guess? That's the only thing I had. I was trying to communicate with Judge Wilson and saying that we can't do this. By the way, Judge Wilson, we're the patentee just because we're the defendant. And I don't know—there's been no prior art listed anywhere. The complaint didn't allege the prior art? No. In no pleadings. So I took the best thing I had, which was a letter from their counsel in which he said that he was going to file a re-exam if we didn't cave. And so I used that. What happened to Claim 2? Where the heck did that thing go? All the claims were simply dismissed, even though at this point, because there's no— You only moved for validity regarding Claim 1. Yeah, preliminary infringement contentions. We weren't required to say which claims we are asserting. And in jurisdictions where there are no patent local rules, that's usually in response to an interrogatory. Interrogatory saying, which claims are you going to assert? And in the other direction, which prior art do you believe invalidates the claims? You had, I think, some supplemental state law claims in the complaint. Yes, the California section. What was the cause of action asserted in that— The unfair business practices. Well, first of all, we couldn't figure out who was infringing. These are knockoffs coming from China and various manufacturers. The system is you find a good product, then you go to Hong Kong and you have somebody there say, So the product comes in, and there's no labeling on the box. But California law requires there be a law label, and it states the manufacturer. And it states other things, too, you know, fire, retardant rules. And therefore, that helps you find who the infringer is, but we couldn't find that. And so the claim with respect to the state law claims was what exactly? The— Failure to label. The infringer didn't have to comply with the labeling laws, and therefore it was unfair competition because Xenus does, and at added cost, they could just, you know, break the law and sell it cheaper. And those claims were dismissed along with the patent rights? All claims were dismissed, even though we never discussed it. All right. Okay, do you have anything further? Well, there are eight independent reasons for remanding. I think we covered probably all of them. Some are easier than others. The easiest one is to find that a claim is invalid based on a combination of items, and when one of the items isn't even prior art. If we agree with you that the district court abused its discretion in granting summary judgment without allowing discovery and further proceedings, do we need to go any further? Yes, we gave eight independent reasons. Wait, why are you arguing against that? I mean, isn't that the easiest way for you to win? We vacate and remand the grant of summary judgment and send it back so you can do the discovery you asked for and present a different case. Why would we go any further than that? Correct, but within that, we need discovery. If it's just vacating, then the district court could go on like it did and not allow any discovery. Also, we would ask that— I think I just said we're going to vacate and remand to give you the discovery you need. It's really important you listen to the judge's questions. I'm not trying to trick you here. I'm trying to decide what's the simplest way to decide this case, which seems to be to vacate and remand to give you the discovery you wanted and weren't given. Isn't that the easiest way to decide this case? Yes, with the addition of striking the—or granting our motion to strike in which the new prior art was brought in a surreply and an expert affidavit was brought which we never had an opportunity to cross-examine, and we don't want to come in at that point. We would like that stricken so that forcing the infringer to bring a summary judgment motion of invalidity so that we have the whole process. We can file an opposition. We can take discovery. So let me see if I understand the state of play with respect to two items of prior art. The Tiffany bed, that was—and the bed in the box were the two items I was interested in. The Tiffany bed, I take it, was the item that came in in the surreply. That's correct. To which you responded in the sur surreply. Correct. Okay. But there's no doubt that I take it that that is prior art. It's just that you don't think it's invalidating prior art. Correct. Right. Okay. Now the bed in the box, it was left unclear to me when that came in, and you have an argument that that was not in fact prior art because it didn't predate the— That's correct. That came in because it was in the letter from— That was part of the letter. Exactly. And what is your position with respect to whether the bed in the box is prior art or not? It's not prior art because it's not prior. Not prior. But what is—I mean, what evidence would you use to show that it wasn't— or did you use to show that it was not prior to the— Well, the burden is on the party alleging invalidity to show that some, in this case a blog, appeared before the filing date. And I couldn't—there's no date anywhere. I see. So it's a question of lack of proof. Yes. Okay. Thanks. Okay. Why don't we hear from the other side? You have plenty of time left for rebuttal. Is it Mr. Beachman? Am I saying it right? Beachman. Good afternoon. Thank you, Your Honors. May it please the Court. From what I've heard, we need to take a step back and understand that, in fact, the district court, what it had attempted to do, and I would argue successfully, was to tailor the issue. It didn't cut off discovery. It didn't say you can't get to any of these issues. It said, first and fundamentally, there's a threshold issue. How is it even close to being possible to ordering the patentee to file a motion for validity when the patent bears a presumption of validity? Understood that— I mean, even if he was going to do this without discovery, shouldn't it have been ordering you to file the motion of invalidity so that you were forced to list the prior art? I believe the way that the Court had phrased it, and district court counsel— particularly 81 to 92— I think the question was, each other's pleading will be the inverse of that, in fact. So I understand that the burden then shifts, but the way the Court had addressed it was to let the patent holder demonstrate that the patent is valid. But the patent holder doesn't have to demonstrate that it's valid because it's presumed valid unless you demonstrate by clear and convincing evidence that it's not. And I think that's exactly— he's requiring them to shoot in the dark at a target that they don't even know about until you present your motion. And I think what the district court did very fairly and correctly was in trying to sort out this issue, in trying to resolve the issue of validity before opening the path to discovery, the Court gave a very fair determination by saying— How is this fair? Because then you filed a motion, they filed a response, and then you filed a server reply coming in with even more new prior art that they weren't allowed to talk about. And that's what the district court relied on. That's not entirely accurate, Your Honor. What happened after the server reply was filed, the Court suggested that the patent holder, the appellant being entitled to file a server reply. And the patent holder did not. Zenas did not do that. In fact, the Court said on the record, are you satisfied with the briefing? And Zenas said, yes, we're satisfied. Wasn't that before the server reply? That was in the initial stages, yes, Your Honor. And then at the stage of the server reply, the argument that's advanced now, which wasn't advanced at the time, was, well, we didn't have enough time to file the server reply. In other words, when the idea of the Tiffany bed and the discovery of the Tiffany bed was presented to the district court, the district court afforded Zenas an opportunity to file a server reply. Where were they afforded the opportunity to get discovery? Well, the issue that the Court said, and then again, that would be at Appendix 81 through 92, there was a discussion about the discovery. And Zenas' counsel was arguing that, well, we want to know if there's a nefarious connection between the entities and the individual. We want to know if they... Your Honor, what... Look on page, supplemental appendix page 11. What the Court was... Supplemental appendix page 11. Thank you, Your Honor. Supplemental appendix page 11 is a reporter, a portion of the reporter transcript, is this correct? That's correct, Your Honor. And at the bottom, it's made clear by the Court, the question was asked, is all discovery stayed, and it is, but not on the standing question. So when did they have an opportunity for discovery on these obviousness things? When could they depose the expert that you put in on your server reply or question anyone in your employee about the references that you attached there? The district court took the view that there was no... None of these secondary considerations were presented as argument. And what Zenas was free to do was to argue, as counsel did this morning, that it had $87 million in commercial... That's not what I asked you. Let me repeat the question. What I asked you is when did they have the opportunity to depose... You attached an expert report to your server reply, correct? There was a... Not a report, Your Honor. A declaration was attached to the server reply, correct. Distinction without a difference. Thank you. You attached a declaration to your server reply of an expert. When did they have an opportunity to cross-examine or depose that expert? They did not. They had an opportunity to present their own evidence in contravention of our evidence in their server reply that the court had instructed be filed. And at that point, what I've seen now in the appellate documents is that there were concerns that there wasn't enough time. It was a Thanksgiving holiday. But Zenas took no effort at the district court level to express that to the court under Rule 56. They could have said, we need more time for this or we want to get an opportunity to, in fact, depose these folks. They didn't do that. They sat on what they had, and they now take issues subsequent. And we would argue that those issues are... When you say they sat on what they had, perhaps it was because it was their summary judgment motion. And the only thing they had to lose was their summary judgment, which meant if they lost, it then went to trial. And, hey, they might actually get some discovery before the trial happened. Maybe that's why they didn't do all those things you're suggesting because you never actually filed a summary judgment motion of invalidity and the court never put them on notice that that was something that might actually occur. So all they had to lose was their own summary judgment not being granted on the issue of validity. So why would they necessarily have to do all those things? Well, I think unlike the Massey case, this doesn't fall within Massey. This wasn't a sua sponte ruling on a summary judgment that was a surprise to the litigants. But that's the critical question for me, too, as with the presiding judge. Yes, Your Honor. What was the point at which the district judge effectively communicated to your opposing counsel that he was at risk of having summary judgment of invalidity granted against him? Was there any point at which that happened? I believe that was in the May 2nd, 2016 hearing where the discussion turned on, it would be Appendix 80, beginning at 82. I must admit, I don't really know the exact procedural progress. This May 2nd hearing, is this after the conclusion of all the briefing including the SIR reply, or is this prior to that? Prior. So prior to the SIR reply, okay. So at this point, and I'm looking at Appendix 92, the court states, Sir, listen to what I'm saying. You're ordered to make a motion in three weeks on the validity, on the question of the validity of your patent. Now that's directed at Mr. Wallace, correct? That's correct. So the court is directing Mr. Wallace to file a motion of validity, a summary judgment motion of validity. My question to you is, where does the district court indicate that Mr. Wallace and his client are at risk of having summary judgment of invalidity granted against them? Well, I think that in the event that they were to not prevail on a motion for summary judgment, the inverse of one necessarily is the other. No, no, no. You know better than that. I do. You do know better than that. You can't argue that if you don't get summary judgment of validity, the necessary legal consequence of that is the entry of summary judgment of invalidity. You're not arguing that, right? No, Your Honor. Okay. Then the question is, when does the judge tell Mr. Wallace and his client that he is at risk of having summary judgment of invalidity granted against him? I don't think there's an explicit statement of that, but I think the parties Isn't that what Rule 56F requires? Well, I think the parties impliedly, and not impliedly, when they filed their 26F reports and both sides agreed that this case would go by dispositive motion, then each party was aware of the risk. But you never moved for summary judgment of invalidity. So on the procedural posture of this case, it's a sua sponte grant, a summary judgment to you without notice to your opponent. Isn't that the way it works? And if so, doesn't that violate Rule 56? I understand that in interpreting what happened in the record, that that's this court's or Your Honor's view. I think that there was a series of discussions leading up to how this matter would be resolved, and over the course of I believe four separate hearings, there were discussions wherein the idea that the issue of validity would be first tested by the district court before it went on to consider infringement. Is there any evidence in this record that the bed-in-the-box prior art is in fact prior art? The bed-in-the-box is an interesting issue because it seems that the only And so I don't believe there is any hard evidence that indicates whether or not that's prior art. I don't necessarily think that the district judge hung his hat on that particular bed-in-the-box. I think what happened was when the Tiffany bed came along, the district court recognized that oftentimes litigation in the patent context is far beyond the dispute of the parties. The rulings are broad sweeping and they affect commerce in general down the road, and I think that when the Tiffany bed was in fact discovered, it was demonstrative of prior art that's fairly on point using the rooms that are inside the storage. And the court recognized the importance of that and afforded Zenas the opportunity to address it, and that was with what we've discussed already about the Sir, Sir reply. Any further questions from the court? Nothing further. Thank you. Thank you. Mr. Wallace, you have some time. Thank you. Just two quick points. The CAP parties have said that my client received notice that there would be a summary judgment motion of invalidity. As I believe you all know, there was no notice whatsoever, and the discussion about bringing a summary judgment motion on May 2nd, that was way, way before the whole motion was brought. The Sir reply, the motion to strike, the Sir, Sir reply, so it has nothing to do with notice for a motion for invalidity. Opposing counsel said somehow that the 26F filings showed that Zenas was aware that there could be a summary judgment motion for invalidity. That's incorrect. There is no mention in the 26F report about any summary judgment motion for invalidity. The statement in the 26F report is that the case could be disposed of early with a summary judgment motion for infringement, and that is what was at first contemplated by Judge Wilson, who then changed his mind during the hearing. About the bed-in-the-box, the CAP parties just stated that the district court, quote, did not hang his hat on this reference. That is false. That's referred to explicitly in the order in validating Claims 1 and 3. That's at appendix page 9. It's referred to twice, but in both paragraphs. And he says someone with ordinary skill in the art would view the Tiffany bed, the Asplen bed, and the bed-in-the-box, where all the pieces fit in the compartment, and combine these references. So that's one of the items of prior art that's being combined in a combination. And if it's not prior art, that invalidity argument fails. I have no more comments. Okay. I thank counsel for their arguments. The case is taken under submission. All rise. The honorable court is adjourned until tomorrow morning at 10 a.m.